**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

AKO K. BURRELL,

                                        Plaintiff,

v.                                                          9:22-cv-0770 (BKS/TWD)

EARL BELL, et al.,

                                        Defendants.

_____

**Appearances:**

_Plaintiff, pro se_:
Ako K. Burrell
17-B-2994
Eastern NY Correctional Facility
Box 338
Napanoch, NY 13021

_For Defendants_:
Letita James, Attorney General of the State of New York
William A. Scott, Assistant Attorney General
The Capitol
Albany, NY 12224

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiff Ako K. Burrell ("Plaintiff") filed this action pro se under 42 U.S.C. § 1983

asserting claims arising out of his incarceration at Clinton Correctional Facility.  (_See generally_

Dkt. No. 1).  Following the Court's initial review of Plaintiff's complaint pursuant to 28 U.S.C. §

1915(e) and 28 U.S.C. § 1915A, the following claims remain: (1) First Amendment access to

courts against defendants Bell, McIntosh, King, Wilson, and Whitehurst; (2) First Amendment

retaliation against defendants Wilson, Whitehurst, King, and Lt. Sorosa[1] related to Plaintiff's removal from his paralegal position in the law library; (3) First Amendment retaliation against defendant Benware related to Plaintiff's quarterly review; and (4) Fourteenth Amendment equal protection against defendants Benware and Webb.  (Dkt. No. 6).  Defendants Bell, McIntosh, King, Wilson, Whitehurst, Benware, and Webb (together, "Defendants") answered the complaint and discovery ensued.  (*See* Dkt. Nos. 21, 22).

Presently before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, (Dkt. No. 90), which is fully briefed, (Dkt. Nos. 90-1, 105-1, 109).  For the following reasons, Defendants' motion is granted in part and denied in part.

## II.    BACKGROUND [2]

### A.    The Parties

During the relevant time, Plaintiff was incarcerated at Clinton.  (*See generally* Dkt. No. 1).  Earl Bell was the Superintendent at Clinton from January of 2018, until July 19, 2021.  (Dkt. No. 90-3, ¶ 1).  Donita McIntosh was the Superintendent at Clinton from July 19, 2021, until September 18, 2023.  (*Id*. ¶ 2).  Marie-Josee King is the current Superintendent at Clinton but was the Deputy Superintendent for Programs at all times relevant to this case.  (*Id*. ¶ 3).  Angela Benware was an Offender Rehabilitation Coordinator at Clinton during the relevant time.  (*Id*. ¶

---

[1] To date, Lt. Sorosa has not appeared in this action.  (*See* Docket Report).  For reasons discussed below, the Clerk is directed to terminate Lt. Sorosa from the Docket.

[2] The facts are drawn from Defendants' statements of material facts, (Dkt No. 90-3), and Plaintiff's response, (Dkt. No. 105), to the extent the facts are well-supported by pinpoint citations to the record, as well as the exhibits attached thereto and cited therein.  The facts are construed in the light most favorable to Plaintiff as the non-moving party.  *Gilles v. Repicky*, 511 F.3d 239, 243 (2d Cir. 2007).  Citations to court documents utilize the pagination generated by CM/ECF.  Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

4).  Chad Webb is the Deputy Superintendent of Program at Clinton, but was the Education

Supervisor at Clinton at all times relevant to the complaint.  (*Id*. ¶ 5).  Mark Wilson and Donald

Whitehurst are correction officers at Clinton, both of whom worked as law library Supervisors

during the relevant time period.  (*Id*. ¶¶ 4-7).

### B.    Plaintiff's Writ of Habeas Corpus

On February 12, 2021, Plaintiff filed a Writ of Habeas Corpus (the "Writ") dated January

27, 2021, with the Clinton County Supreme Court.  (*Id*. ¶ 10).  The Writ consisted of Plaintiff's

allegations regarding Clinton's handling of the COVID-19 pandemic.  (*Id*. ¶ 12).  The

respondent, Bell, answered the Writ, and Plaintiff filed a reply to that answer.  (*Id*. ¶¶ 11, 13).

Plaintiff was present remotely for oral argument on the Writ on March 24, 2021.  (*Id*. ¶ 14).  He

also corresponded with the court and opposing counsel while the Writ was pending.  (*Id*. ¶ 15).

The Writ was dismissed on July 2, 2021.  (*Id*. ¶ 16).

### C.    First Amendment Access to Courts

Plaintiff generally alleges Bell, King, McIntosh, Wilson, and Whitehurst interfered with

his access to the courts because he filed the Writ.  (*Id*. ¶ 17).  Plaintiff claims McIntosh, Wilson,

and Whitehurst tampered with and withheld Plaintiff's incoming and outgoing legal mail.  (Dkt.

No. 1, ¶¶ 51, 58, 120).  Plaintiff also alleges Bell, McIntosh, Wilson, King, and Whitehurst

implemented a policy that required Plaintiff to disclose the contents of his outgoing mail.  (*Id*. ¶

56).  Plaintiff asserts that, as a result of the foregoing actions and policies, three Article 78

petitions were dismissed and his Court of Claims action was not properly filed.  (*Id*. ¶¶ 51, 56-

58; Dkt. No. 1-1, at 90, 97-99, 116-18, 133-36, 152, 160, 186, 188; Dkt. No. 1-2, at 4; Dkt. No.

90-3, ¶ 18).

The three Article 78 proceedings are: *Burrell v. Annucci* (Albany Cnty. Sup. Ct. Index #10042-21); *Burrell v. McCoy* (Albany Cnty. Sup. Ct. Index #782-22); and *Burrell v. Rodriguez* (Albany Cnty. Sup. Ct. Index #2571-22).  (*Id*. ¶ 19).  The Court of Claims proceeding was captioned *Burrell v. State of New York*.  (*Id*. ¶ 20).

### D.    First Amendment Retaliation

Plaintiff alleges he was retaliated against for filing the Writ in two ways.  (*Id*. ¶ 40). First, Plaintiff claims King, Wilson, and Whitehurst removed him from his position as a paralegal assistant at Clinton's law library.  (*Id*.).  Second, Plaintiff claims Benware improperly conducted Plaintiff's quarterly reviews by refusing to coordinate a rehabilitation plan that was conducive to his release, by refusing to issue a facility transfer, and by refusing to alter his security classification.  (*Id*.).  King, Wilson, Whitehurst, and Benware declare they were not aware of the Writ before Plaintiff filed this action.  (*Id*. ¶ 41).

On February 18, 2021, King approved a request from non-party Lieutenant Eric Cragle to remove Plaintiff from his position as a paralegal assistant.  (*Id*. ¶¶ 43-45).  Defendants maintain Plaintiff was removed from his position as paralegal assistant due to security concerns and not because of any lawsuit he filed.  (*Id*. ¶¶ 45, 46, 49).  Wilson and Whitehurst affirm they played no role in removing Plaintiff from his position as a paralegal assistant.  (*Id*. ¶¶ 47, 48).

Quarterly reviews are conducted to see how incarcerated individuals are coping with incarceration, to ensure they are programming correctly, and to track their "case plan."  (*Id*. ¶ 51).  A quarterly review is not used to coordinate a rehabilitation plan for an incarcerated individual, nor does it have anything to do with an incarcerated inmate's security classification or transfer to another facility.  (*Id*. ¶¶ 52, 53).  Offender Rehabilitation Coordinators have no ability or authority to approve, deny, or impact the transfer of an incarcerated individual.  (*Id*. ¶ 54).

### E.    Fourteenth Amendment Equal Protection

Plaintiff alleges Benware and Webb denied him equal protection, based on his race, by refusing to file Plaintiff's paralegal certificate with the Training Achievement & Potential Employability Report ("TAPER"), which would have allowed Plaintiff to receive paralegal wages.  (Dkt. No. 1, ¶ 60; Dkt. No. 1-2, at 26).  Plaintiff claims Webb placed the same paralegal certificate in the file of a white prisoner (identified as "Dewie"), who received paralegal wages.  (Dkt. No. 1, ¶ 60).  Defendants maintain that only tasks and titles earned as part of Department of Corrections and Community Supervision ("DOCCS") Vocational Education or Industry program are entered in TAPER.  (Dkt. No. 90-3, ¶ 57).  Paralegal certifications obtained through correspondence courses, such as Plaintiff's, are not entered in TAPER.  (*Id.* ¶¶ 58, 59).  Benware and Webb declare they have never filed an incarcerated individual's paralegal certification in TAPER.  (*Id.* ¶¶ 60, 61).

## III.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).  A fact is material if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*, 477 U.S. at 248).  The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (explaining that summary judgment is appropriate where the nonmoving party fails to "'come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor' an essential element of a claim" (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010))).

If the moving party meets this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248; *see also Celotex*, 477 U.S. at 323-24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (citing *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

Where the plaintiff proceeds pro se, the Court must read their submissions liberally and interpret them "to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). However, a pro se party's "'bald assertion,' completely unsupported by evidence, is not sufficient

to overcome a motion for summary judgment." *Jordan v. New York*, 773 F. Supp. 2d 255, 268

(N.D.N.Y. 2010) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)); *see also Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011).

## IV.    STATEMENT OF MATERIAL FACTS

Before turning to the merits, the Court must address Defendants' contention that many of

Plaintiff's factual allegations are not supported by any admissible evidence and that Plaintiff has

therefore failed to raise a genuine issue of material fact with respect to those allegations.  (Dkt.

No. 109, at 5-6).  Defendants further maintain that while Plaintiff denies most of the statements

in their Rule 56.1 statement, (*see* Dkt. No. 105, at 3-5), Plaintiff has failed to point to any

testimony or documentary evidence to warrant the denial.  (Dkt. No. 109, at 5-6).

Rule 56(c)(1)(A) requires that a "party asserting that a fact . . . is genuinely disputed must

support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B)

showing that the materials cited do not establish the absence or presence of a genuine dispute."

Fed. R. Civ. P. 56(c)(1)(A).  Under Rule 56(e), if a party "fails to properly address another

party's assertion of fact as required by Rule 56(c), the court may," *inter alia*, "consider the fact

undisputed for purposes of the motion" or "grant summary judgment if the motion and

supporting materials—including the facts considered undisputed—show that the movant is

entitled to it."  Fed. R. Civ. P. 56(e)(2), (3).  Similarly, Local Rule 56.1(b) requires that each

denial in a response to a statement of material facts "set forth a specific citation to the record

where the factual issue arises," and provides that "[t]he Court may deem admitted any properly

supported facts set forth in the Statement of Material Facts that the opposing party does not

specifically controvert."  (N.D.N.Y. L.R. 56.1(b) (emphasis omitted)).

A court has discretion to deem facts admitted or grant summary judgment in accord with Rule 56(e)(2), (3), and the court's local rules, but is not required to do so. *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible."); *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules."). A court "may in its discretion opt to 'conduct an assiduous review of the record' even where one of the parties has failed to file" a Local Rule 56.1 statement. *Id*.; *see also* Advisory Committee Notes to 2010 Amendment to Fed. R. Civ. P. 56 (noting that when a party "fails to properly address another party's assertion of fact as required by Rule 56(c)," "the court may choose not to consider the fact as undisputed, particularly if the court knows of record materials that show grounds for genuine dispute," and that "the court may seek to reassure itself by some examination of the record before granting summary judgment against a pro se litigant"); Fed. R. Civ. P. 56(c)(3) (noting that the court "may consider other materials in the record," beyond the cited materials).

In moving for summary judgment, Defendant expressly notified Plaintiff that:

> pursuant to Federal Rule of Civil Procedure Rule 56(e), when a motion for summary judgment is made and properly supported, you may not simply rely upon your pleadings to oppose said motion, but you must respond by affidavits or as otherwise provided in that rule, setting forth specific facts showing that there is a genuine issue of material fact for trial. Any factual assertions in Defendants' Declarations will be accepted by the Judge as being true unless you submit affidavits or other documentary evidence contradicting our assertions.

(Dkt. No. 90, at 1-2).  In addition, as required by N.D.N.Y. Local Rule 56.2, Defendants annexed

a "Notification of the Consequences of Failing to Respond to a Summary Judgment Motion" to

its motion:

> **WARNING**:  If you do not submit a proper response to the defendants' statement of material facts, **the Court may deem you to have admitted the defendants' factual statements**.  If you do not submit copies of record evidence in support of your denials, **the Court may deem defendants' factual statements to be true**.  If you do not submit a proper response memorandum of law, **the Court may deem you to have conceded the defendants' arguments**.  If you do not respond to this motion properly (or at all), summary judgment may be entered against you, meaning that **SOME OR ALL OF YOUR CLAIMS MAY BE DISMISSED**.

(*Id.* at 3).  Despite these warnings, Defendants argue Plaintiff does nothing more than reassert the

allegations in his complaint, which is unsworn, without reference to any admissible evidence.

(Dkt. No. 109, at 5).  Further, while Plaintiff denies several of Defendants' statements, he has

failed to point to any testimony or documentary evidence to support his denials.  (*Id.* at 6).

However, "as the Second Circuit has made clear [that] 'special solicitude should be

afforded pro se litigants generally, when confronted with motions for summary judgment," and

because "'the Court retains some discretion to consider the substance of the plaintiff's

arguments, where actually supported by evidentiary submissions,'" *Hamm v. Hatcher*, No. 05-

cv-503, 2013 WL 71770, at *6 (S.D.N.Y. Jan. 7, 2013) (internal citations omitted) (first quoting

*Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988); and then quoting *Wali v. One Source Co.*,

678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009)), the Court has opted to review the entire record in

this case.  However, the Court's review has revealed that Plaintiff's opposition contains very

little in the way of admissible evidence.  (*See generally* Dkt. Nos. 105, 105-1).  Moreover, since

Plaintiff's complaint is not verified, it may not be properly treated as an affidavit in opposition to Defendants' motion. (*See* Dkt. No. 1).[3]

Nonetheless, while mindful of Plaintiff's status as a pro se litigant, because Plaintiff received "adequate notice that he needed to submit affidavits or other admissible evidence to create a genuine factual dispute on his claims," the Court accepts Defendants' version of the facts where Plaintiff has not properly supported his factual allegations. *See Salahuddin v. Goord*, 467 F.3d 263, 278 (2d Cir. 2006) (accepting the defendant's "version of events" where the pro se plaintiff "received adequate notice that he needed to submit affidavits or other admissible evidence to create a genuine factual dispute on his claims," but pointed "only to his unsworn complaint to dispute [the defendant's] version of events").

## V.     DISCUSSION

### A.     Personal Involvement

It is well-settled that, to establish a defendant's individual liability in a suit brought under Section 1983, a plaintiff must show "the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (citations omitted). A plaintiff must "allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). There is "no special rule for supervisory liability," and "a plaintiff must plead and prove 'that each

---

[3] *Cf. McAllister v. Call*, No. 9:10-CV-610 (FJS/CFH), 2014 WL 5475293, at *3 (N.D.N.Y. Oct. 29, 2014) (finding allegations in plaintiff's verified complaint sufficient to controvert facts in statement of material facts on motion for summary judgment); *see also Biller v. Excellus Health Plan, Inc.*, No. 14-CV-0043, 2015 WL 5316129, at *1 (N.D.N.Y. Sept. 11, 2015) ("[A] plaintiff may not use her unverified pleading to support a factual assertion in her motion for summary judgment."); *see also Continental Ins. Co. v. Atl. Cas. Ins. Co.*, No. 07-CV-3635, 2009 WL 1564144, at *1 n.1 (S.D.N.Y. June 4, 2009) ("On a motion for summary judgment, however, allegations in an unverified complaint cannot be considered as evidence."); *Thomas v. Jacobs*, No. 19-CV-6554 (CS), 2025 WL 662899, at *1 (S.D.N.Y. Feb. 28, 2025) (same).

Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

The Second Circuit has explained that "[t]he factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue because the elements of different constitutional violations vary," and "[t]he violation must be established against the supervisory official directly." *Id.* (second alteration in original) (internal quotations and citations omitted). Accordingly, the Court will address Defendants' arguments related to their lack of personal involvement below. (Dkt. No. No. 90-1, at 15-18).

## B.    Denial of Access to Courts

The First Amendment right to petition the government, which applies to the states through the Fourteenth Amendment, "extends to all departments of the Government, including the Courts." *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 90 (2d Cir. 2017) (citation omitted). "A plaintiff's constitutional right of access to the courts is violated where government officials obstruct legitimate efforts to seek judicial redress." *Id.* (citation and internal quotation marks omitted).

Circuit Courts of Appeals have "recognized two variants of right-of-access claims": (1) "forward-looking suits," in which plaintiffs allege that "'systemic official action' frustrated their ability to file a suit," and (2) "backward-looking" claims "covering suits that 'cannot now be tried (or tried with all material evidence), no matter what official action may be in the future.'" *Sousa v. Marquez*, 702 F.3d 124, 127–28 (2d Cir. 2012) (citation omitted). A plaintiff may have a backward-looking right-of-access claim, for example, where the official action "caused the loss or inadequate settlement of a meritorious case." *Id.* at 128. However, the Second Circuit has not

recognized the viability of backward-looking right-of-access claims. *See id.* (noting that the "viability of backward-looking right-of-access claims is far from clear in this Circuit" and declining to decide the issue); *Kern v. Contento*, No. 21-cv-1672, 2022 WL 1112767, at *3 (2d Cir. Apr. 14, 2022) (summary order) (noting that *Sousa* "declined to decide whether to follow other circuits in recognizing a backward-looking claim").

Here, Plaintiff claims that McIntosh, Wilson, and Whitehurst tampered with and withheld Plaintiff's incoming and outgoing legal mail.  (Dkt. No. 1, ¶¶ 51, 58, 120).  Plaintiff also alleges that Bell, McIntosh, Wilson, King, and Whitehurst implemented a policy that required Plaintiff to disclose the contents of his outgoing mail.  (*Id.* ¶ 56).  Further, Wilson and Whitehurst allegedly informed Plaintiff that they would "not mail[] out [anything] that has me or my boys listed as a Defendant."  *Id.*  Plaintiff asserts that, as a result of Defendants' actions and policies, Plaintiff's Article 78 petitions were dismissed and his Court of Claims action was not properly filed.  (*See id.* ¶¶ 51, 56-58; *see also* Dkt. No. 1-1, at 90, 97-99, 116-118, 133-136, 152, 160, 186, 188; Dkt. No. 1-2, at 4).  Thus, Plaintiff brings a backward-looking right-of-access claim.

Although the availability of a backward-looking access claim remains uncertain in this Circuit, *Sousa v. Marquez*, 702 F.3d at 28, the existing case law suggests four elements:

> First, the plaintiff must identify a nonfrivolous, arguable underlying claim.  Second, the plaintiff must establish that the defendant took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim.  Third, the plaintiff must show that the defendant's alleged conduct was deliberate and malicious.  Fourth, the plaintiff must demonstrate that the defendant's actions resulted in an actual injury to the plaintiff.

*Jean-Laurent v. Lawrence*, No. 12-CV-1502, 2015 WL 1208318, at *4 (S.D.N.Y. Mar. 17, 2015) (internal citations and quotations omitted).

Defendants argue Bell, McIntosh, Wilson, King, and Whitehurst are entitled to summary judgment. (Dkt. No. 90-1, at 15-16, 18-21). The Court agrees.

First, there is no dispute that Plaintiff commenced all three Article 78 proceedings, *Burrell v. Annucci*, *Burrell v. McCoy*, and *Burrell v. Rodriguez*, and the Court of Claims proceeding captioned *Burrell v. State of New York*, *after* the Writ had been dismissed. (Dkt. No. 90-3, ¶ 21; *see* Dkt. No. 105-1, at 9). In the Article 78 actions, Plaintiff received a signed Order to Show Cause from the assigned Justice of the Supreme Court with directions on how to serve the respondents and the Office of the Attorney General. (*See* Dkt. Nos. 90-8, 90-9, 90-10). Notwithstanding Plaintiff's claim that he "complied with the Court Order in each action," Dkt. No. 105-1, at 9, the record demonstrates the three Article 78 cases were dismissed as Plaintiff failed to properly serve the relevant Order to Show Cause. (*See* Dkt. Nos. 90-12, 90-13, 90-14). In fact, in the Decisions and Orders issued in *Burrell v. McCoy* and *Burrell v. Rodriguez*, the courts noted that while Plaintiff served the respondents with papers, Plaintiff served the wrong papers, meaning the "unsigned" Order to Show Cause as opposed to the "signed" Order. (Dkt. No. 90-1, at 10). Thus, the cases were dismissed due to Plaintiff's errors and not due to interference from Defendants.[4] Plaintiff's ability to serve the correct papers was not impeded by Defendants or any "policy" despite Plaintiff's conclusory allegations. *See Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) ("Conclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact.").

Indeed, Bell, King, McIntosh, Whitehurst, and Wilson declare they never prevented Plaintiff from commencing suit in any court or from filing documents relative to any legal

---

[4] Insofar as Plaintiff maintains "he has no ability to sign[ ] an Order to Show, (*see* Dkt. No. 105, ¶ 77), Plaintiff appears to misunderstand that he was directed to file the signed Orders to Show Cause executed by the assigned Justice of the Supreme Court in each matter.

proceeding.  (Dkt. No. 90-3, ¶ 25).  Defendants maintain there was no mail policy in place at Clinton that prevented Plaintiff from filing suit in any court and/or from filing documents relative to any legal proceeding.  (*Id*. ¶ 26).  Bell, King, McIntosh, Whitehurst, and Wilson declare they played no role in receiving, sending, or otherwise processing Plaintiff's mail.  (*Id*. ¶¶ 27, 29, 31, 33, 35).  They never authorized anyone to open, inspect, or read any privileged correspondence sent by Plaintiff nor was Plaintiff required to disclose the contents of his outgoing mail and he was not required to send mail only from Clinton's law library.  (*Id*. ¶¶ 28, 30, 32, 34, 36).

Similarly, Plaintiff's attempt at filing the Court of Claims action was not impeded by Defendants, despite Plaintiff's conclusory allegations.  The Court of Claims received Plaintiff's filing in *Burrell v. State of New York*, but it was returned because Plaintiff failed to pay the filing fee or ask for a reduction of that fee.  (Dkt. No. 90-3, ¶ 24).  Other than sheer speculation and conjecture, Plaintiff provides no evidence to create a genuine issue of material fact as to the second element, "whether defendant took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim."  *Jean-Laurent*, 2015 WL 1208318, at *4.

As to the third element, "[d]eliberate and malicious interference [with access to the courts] is established by a defendant's mental state—specifically, whether he or she had intended to hinder a plaintiff's ability to obtain a remedy in a court of law."  *Rodriguez v. Diaz*, No. 05 CIV. 1831, 2011 WL 3427147, at *3 (S.D.N.Y. Aug. 3, 2011*), aff'd*, 505 F. App'x 26 (2d Cir. 2012) (citations omitted).  Again, Plaintiff has presented no admissible evidence sufficient to create a genuine issue of material that Defendants acted deliberately or maliciously to impede his access to the courts.  (*See* Dkt. No. 90-1, at 19).

Additionally, Plaintiff's general contention that his incoming and outgoing legal mail was impeded by Defendants is refuted by his own filings and correspondence in the other cases he has filed in both federal and state court.  While not dispositive, during the time Plaintiff claims Bell, King, McIntosh, Whitehurst, and Wilson were interfering with his access to courts, Plaintiff commenced several actions in the Northern District of New York.  (Dkt. No. 90-3, ¶ 37).[5]  He also filed a claim in Albany County Supreme Court captioned *Burrell v. Annucci* (Albany Cnty. Sup. Ct. Index #788-21), and opposed the motion to dismiss filed in that action.  (*Id.* ¶¶ 38, 39).

In sum, Plaintiff has failed to come forward with any evidence from which a reasonable jury could conclude Bell, McIntosh, Wilson, King, and Whitehurst took action that frustrated Plaintiff's efforts to pursue his legal claims.  Therefore, Bell, McIntosh, Wilson, King, and Whitehurst are entitled to summary judgment on this claim and Plaintiff's access to the court claim is dismissed.

## C.    Retaliation

To establish a First Amendment retaliation claim, the plaintiff must demonstrate: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."  *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)).  In the prison context, "adverse action" is conduct "that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights."  *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003).  This inquiry must be "tailored to the different circumstances in which retaliation claims arise," bearing in mind that "[p]risoners may

---

[5] *See Burrell v. Mason et al.*, 21-cv-01165, ECF No. 1 (N.D.N.Y. 2021); *Burrell v. Durkin et al.*, 22-cv-00102, ECF No. 1 (N.D.N.Y. 2022); *Burrell v. Central New York Psychiatric Center, et al.*, 22-cv-00344, ECF No. 1 (N.D.N.Y. 2022).

be required to tolerate more . . . than average citizens, before a [retaliatory] action taken against

them is considered adverse." *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001), *overruled on*

*other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

"Once the plaintiff carries his initial burden, 'the defendants must show by a

preponderance of the evidence that they would have disciplined the plaintiff even in the absence

of the protected conduct.'" *Hynes v. Squillace*, 143 F.3d 653, 657 (2d Cir. 1998) (quoting

*Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996) (internal quotation marks omitted)).

Because of "the near inevitability of decisions and actions by prison officials to which prisoners

will take exception and the ease with which claims of retaliation may be fabricated," prisoners'

claims of retaliation are examined with "skepticism and particular care." *Colon v. Coughlin*, 58

F.3d 865, 872 (2d Cir. 1995) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983),

*overruled on other grounds by Swierkiewicz*, 534 U.S. 506).

### 1.    Law Library Position

Plaintiff claims that Wilson, Whitehurst, King, and Lt. Sorosa removed him from his

position in the law library after reading and becoming aware of his filing of the Writ.  (Dkt. No.

1, ¶¶ 26, 77).

Defendants do not challenge whether Plaintiff engaged in protected conduct or speech.

(Dkt. No. 90-1, at 22-24).  Indeed, it is well settled that filing a lawsuit is constitutionally

protected conduct.  *See Johnson v. Eggersdorf*, 8 F. App'x 140, 144 (2d Cir. 2001); *see also*

*Wheeler v. Pataki*, No. 9:07-CV-0892 (TJM/GHL), 2009 WL 674152, at *9 (N.D.N.Y. Mar. 11,

2009) (finding that the plaintiff engaged in protected conduct by filing a state habeas corpus

action).  Nor do Defendants appear to challenge whether the alleged conduct at issue constituted

an adverse action.  (Dkt. No. 90-1, at 22-24).  *See Henderson v. Vanderwerff*, No. 9:13-CV-1537

(MAD/CFH), 2016 WL 660921, at *5 (N.D.N.Y. Feb. 18, 2016) (finding that the plaintiff plausibly alleged that the defendant retaliated against him when he removed the plaintiff from his law library job).

Defendants do, however, take aim at the third element and argue there is no causal connection between the protected speech and the alleged adverse actions. (Dkt. No. 90-1, at 22-24). Wilson and Whitehurst also seek summary judgment for lack of personal involvement. (*Id*. at 17).

To establish a causal connection between protected activities and the adverse action, the court may consider a number of factors, including "any statements made by the defendant concerning his motivation," and "the temporal proximity between the protected activity and the defendant's adverse action." *Hendriks v. Delutis*, No. 9:20-CV-1035 (MAD/ML), 2023 WL 4740173, at *3 (N.D.N.Y. July 24, 2023) (citations omitted). But the Second Circuit has "repeatedly held that temporal proximity alone is insufficient for a prisoner's retaliation claim to survive summary judgment." *Morrow v. Bauersfeld*, No. 21-2928-CV, 2022 WL 17097590, at *2 (2d Cir. Nov. 22, 2022) (collecting cases); *see also Williams v. King*, 763 F. App'x 36, 38-39 (2d Cir. 2019) ("The only evidence demonstrating a retaliatory motive is temporal proximity which, alone, is insufficient to defeat summary judgment."); *Washington v. Afify*, 681 F. App'x 43, 46 (2d Cir. 2017).

### a.    Lt. Sorosa

Although Plaintiff's First Amendment retaliation claim against Lt. Sorosa survived the Court's initial review, (Dkt. No. 6, at 28), the Summons for Lt. Sorosa was returned unexecuted as DOCCS was unable to identify an employee with that name. (*See* Dkt. Nos. 15, 15-1). On July 28, 2023, Plaintiff filed a letter indicating the "correct" defendant is "Lt. Cragle" and not

"Lt. Sorosa." (Dkt. No. 31). By text order entered August 3, 2023, Plaintiff was advised that if he wished to add a new defendant, he would need to move to amend his complaint. (Dkt. No. 32). Plaintiff was reminded of his obligation to move to amend if he sought to add a new party by a second text order on January 11, 2024. (Dkt. No. 52). However, Plaintiff never moved to amend his complaint. (*See generally* Docket Report).

Given the forgoing, Defendants request that Lt. Sorosa be removed as a party to this action and any claims asserted against Lt. Sorosa, should they exist, be dismissed. (Dkt. No. 90-1, at 6 n.2). In his opposition submission, Plaintiff explains he named Lt. Sorosa as a defendant because Whitehurst "lied" and stated "Lt. Sorosa" authorized his removal. (Dkt. No. 105-1, at 6). Plaintiff does not substantively oppose Defendants' request. (*See generally* Dkt. Nos. 105, 105-1). Accordingly, the Court dismisses the First Amendment claim asserted against Lt. Sorosa without prejudice. (*See* Fed. R. Civ. P. 4(m); N.D.N.Y. L.R. 4.1(b)).

### b.    Whitehurst and Wilson

Plaintiff alleges that on or about February 17, 2021, Whitehurst and Wilson removed him from his position as a paralegal assistant in retaliation for filing the Writ on February 12, 2021. (Dkt. No. 1, ¶¶ 31-34, 77). Defendants argue Whitehurst and Wilson are entitled to summary judgment for lack of personal involvement. (Dkt. No. 90-1, at 17). The Court agrees.

As an initial matter, Whitehurst and Wilson affirm they were not aware of the Writ before Plaintiff filed this suit. (Dkt. Nos. 90-31, ¶ 24, 90-32, ¶ 24). Whitehurst and Wilson declare they did not play any role in Plaintiff's removal from his position as a paralegal assistant. (Dkt. Nos. 90-31, ¶ 9, 90-32, ¶-9). As law library Supervisors, Whitehurst and Wilson manage the day-to-day operations of the law library. (Dkt. Nos. 90-31, ¶ 5, 90-32, ¶ 5). They supervise incarcerated workers, maintain the security of all law library materials, ensure that loaned and

returned materials are inspected to make sure they are contraband-free, and initiate disciplinary proceedings/seek restitution when incarcerated individuals damage or destroy law library materials.  (Dkt. Nos. 90-31, ¶ 5, 90-32, ¶ 5).

As discussed further below, Defendants' submissions demonstrate that on February 18, 2021, Cragle, who is not a party to this action, requested that Plaintiff be removed from his paralegal assistant position because Plaintiff had been improperly exchanging legal material with other incarcerated individuals.  (Dkt. No. 90-3, ¶¶ 43, 45).  On February 18, 2021, King, who was then then Deputy Superintendent for Programs, approved Cragle's request and Plaintiff was removed as a paralegal assistant.  (*Id*. ¶ 46).  Cragle and King both declare Whitehurst and Wilson played no role in the decision to remove Plaintiff from his position as a paralegal assistant.  (Dkt. Nos. 90-25, ¶ 19, 90-28, ¶ 13).

In opposition, although Plaintiff maintains Whitehurst and Wilson were aware of the Writ because, among other things, Plaintiff drafted the habeas petition using a law library computer, (*see* Dkt. No. 105, ¶ 83) and claims Cragle and King "both lied" in their sworn declarations, (*see* Dkt. No. 105-1, at 20), Plaintiff has failed to show that Whitehurst and Wilson had the requisite personal involvement in his removal.  *See Kerzer*, 156 F.3d at 400 ("Conclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact.").  Therefore, Whitehurst and Wilson are entitled to summary judgment on this claim.  *See Tangreti*, 983 F.3d at 618.  Plaintiff's retaliation claim is dismissed against Whitehurst and Wilson.

### c.    King

On the other hand, as to King, Defendants have not met their burden.  (Dkt. No. 90-1, at 22-24).  For her part, King declares that on February 18, 2021, she received and approved a request from non-party Cragle to remove Plaintiff from his position as a paralegal assistant due

to security concerns.  (Dkt. No. 90-28, ¶ 10).  King declares she was not aware of Plaintiff's Writ when she approved his removal as a paralegal assistant and affirms her decision was in no way motivated by Plaintiff's Writ.  (*Id.* ¶ 12).  Rather, her decision was premised solely on Cragle's assessment, (*id.*), who was responsible for ensuring the safety of the law library's staff and the incarcerated individuals working at and utilizing the law library.  (Dkt. No. 90-25, ¶ 7).

In turn, Cragle declares that on or about February 18, 2021, "it came to [his] attention that [ ] Plaintiff had been issued a misbehavior report [for] entering a company without permission and for passing unauthorized and unrecovered items with another [incarcerated individual]."  (*Id.* ¶ 9).[6]  Cragle states that Plaintiff "was not permitted use his position move freely around the facility to exchange items with other [incarcerated individuals]." (Id. ¶ 12).  According to Cragle, "The issuance of the ticket should have resulted in Plaintiff's immediate removal from his position."  (*Id.* ¶ 12).  He also states, "Barring that he should have been removed from his position after he was found guilty of the charges."  (*Id.*).  Based on the foregoing information, Cragle "determined Plaintiff's continued employment as a paralegal assistant was improper and presented a security issue."  (*Id.* ¶ 13).  As such, on February 18, 2021, Cragle made a request to King "to remove Plaintiff from his position as a paralegal assistant."  (*Id.* ¶ 14).  King granted this request and Plaintiff was removed from the position on February 18, 2021.  (*Id.* ¶ 15).  In short, Cragle affirms he "requested that Plaintiff be removed

---

[6] A copy of the misbehavior report is attached as Exhibit A to Cragle's declaration.  (Dkt. No. 90-25, ¶ 9).  The misbehavior report was issued on February 1, 2021, by non-party Martin, a corrections officer, charging Plaintiff with violating Rules 113.15 (unauthorized exchange), 107.10 (interference with employee), 109.10 (out of place), and 109.12 (movement regulation violation).  (Dkt. No. 90-26, 1).  On February 5, 2021, Plaintiff was found not guilty of the unauthorized exchange charge and guilty of the other three charges.  (Dkt. No. 90-2, 1).

from his position as a paralegal assistant solely because of the security threat he presented at the time."  (*Id*. ¶ 18).

Based on the foregoing, Defendants maintain King is entitled to summary judgment because temporal proximity alone is insufficient to establish liability at summary judgment and, in any event, the evidence establishes Plaintiff was removed as a paralegal assistant due to security concerns.  (*See* Dkt. No. 90-1, at 22-23).  The Court does not find summary judgment on this claim to be warranted.

Initially, Plaintiff does not rely on temporal proximity alone.  Defendants maintain Cragle requested that Plaintiff be removed from his position because Plaintiff had been improperly exchanging legal material with other incarcerated individuals, (Dkt. No. 90-3, ¶ 45), but Plaintiff was found not guilty of the "unauthorized exchange," (Dkt. No. 90-27, at 1).  *Williams v. Hill*, No. 6:22-CV-06093, 2025 WL 2419333, at *6 (W.D.N.Y. Aug. 21, 2025) ("[A] fact-finder may infer an improper or retaliatory motive in the adverse action from facts that demonstrate . . . vindication at a hearing on the matter[.]").  Moreover, Cragle declares the "issuance of the ticket [on February 1, 2021,] should have resulted in Plaintiff's immediate removal from his position[,]" (Dkt. Nos. 90-25, ¶ 7), and yet Plaintiff was not removed from his paralegal assistant position until February 18, 2021, well after Plaintiff was found "not guilty" of the unauthorized exchange charge on February 5, 2021.  (Dkt. Nos. 90-27, at 1, 105, ¶¶ 79, 82).  This timeline buttresses Plaintiff's showing of a causal connection.

Further, in his March 18, 2021, letter to King, Plaintiff stated that after he was removed from his law library position, he requested a copy of his "removal documents" but was informed

by Benware there were no such documents. (Dkt. No. 1-1, at 33).[7] Additionally, Plaintiff explained in this letter, "About 10 days or so after the incident, you (DSP Ms. King) conducted a tour of A-Block where I reside. I asked you (Ms. King) about the incident and why you removed me from my Law Library program, but you (Ms. King) stated that you had no idea about my removal and that I should write to you about the problem." *Id*. By Memorandum dated March 30, 2021, King responded to Plaintiff's letter and informed Plaintiff that his "security removal from the Law Library was reviewed and approved by me. The facility is not obligated to disclose the reason for your removal, as it could jeopardize the safety and security of the facility." (Dkt. No. 1-1, at 37).

Construing all of the facts in the light most favorable to Plaintiff, the Court cannot conclude that Plaintiff has failed to raise a genuine issue of material fact as to whether there is a causal connection between his protected activity and his removal from the law library position.[8] Accordingly, Defendants' motion for summary judgment on Plaintiff's retaliation claim as to King is denied.

---

[7] Plaintiff also submitted a copy of the IGRC's response to grievance CL-0206-21 concerning his law library position. (Dkt. No. 1-1, at 39 ("The IGRC representatives agree with the grievant that he should be placed back in his program. During the hearing the grievant presented evidence that he was removed without cause, ie: dismissed MBRs, prior grievances with negative comments from officers named in this grievance, and a lack of documentation for his removal that should be in his guidance folder, as per Dir. #4803, XI, B., 2 and 3.")). The Court takes judicial notice that DOCCS Directive #4803, titled "Incarcerated Program Placement" provides, in relevant part, "The Program Committee Chairperson shall . . . [r]eceive, review, and act upon all program assignment and change requests submitted by staff persons and individuals, document the reasons for such requests, and maintain a file record of requests, related documentation, and action taken in the incarcerated individual's Guidance folder."). *See* https://doccs.ny.gov/system/files/documents/2024/12/4803.pdf (last visited Sept. 10, 2025).
[8] Because the Court concludes there remain genuine issues of material fact underlying Plaintiff's retaliation claim against King, the Court cannot determine as a matter of law whether King is entitled to qualified immunity on this claim. Therefore, Defendants' motion is denied on this issue. (Dkt. No. 90-1, at 25-26).

### 2.    Quarterly Review

Plaintiff alleges Benware retaliated against him and refused to coordinate a rehabilitation plan that was conducive to Plaintiff's release, refused to issue a facility transfer, and refused to assist Plaintiff with his security classification appeal.  (Dkt. No. 1, ¶ 74; Dkt. No. 1-2, at 68; *see also* Dkt. Nos. 105, 105-1).  This retaliation claim lacks merit and is belied by Defendants' admissible evidence.

To begin, Benware submitted a sworn declaration stating she had no knowledge of the Writ until Plaintiff commenced this action.  (Dkt. No. 90-23, ¶¶ 39, 40).  Benware further declares she does not know the nature of Plaintiff's allegations in the Writ.  (*Id*.).  Plaintiff has not produced any evidence, admissible or otherwise, to refute Benware's sworn statements.  *See Henson v. Gagnon*, No. 9:13-CV-0590 (GTS/TWD), 2015 WL 9809874, at *12-13 (N.D.N.Y. Dec. 10, 2015) (dismissing the inmate plaintiff's First Amendment retaliation claim for failure to establish causal connection where the corrections officer defendant submitted a sworn statement that he had no knowledge of the plaintiff's grievance against him at the time of the alleged adverse action, and the plaintiff offered no evidence to refute the defendant's sworn statement), *report and recommendation adopted*, 2016 WL 204494 (N.D.N.Y. Jan. 15, 2016); *Chapple v. Keane*, 903 F. Supp. 583, 585 (S.D.N.Y. 1995) (dismissing retaliation claim where the officer, who allegedly took adverse action, declared under oath that he had no knowledge of the plaintiff's prior complaints); *Perez v. Keysor*, No. 9:10-CV-0518 (LEK/CFH), 2013 WL 5493932, at *15 (N.D.N.Y. Sept. 30, 2013) (finding no causal connection where the plaintiff's "conclusory and speculative allegations" that the defendants knew of his prior grievance were contrary to the defendants' declarations stating that they had no knowledge of such grievance); *Shaheen v. Filion*, No. 9:04-CV-625 (FJS/DRH), 2006 WL 2792739, at *3 (N.D.N.Y. Sept. 17,

2006) (dismissing retaliation claim where the inmate plaintiff "provide[d] no evidence to demonstrate that any defendant had any knowledge of his complaints . . . prior to the [adverse action]," and to which the defendants "provided a declaration stating that he or she was unaware of any of [the plaintiff's] writings that criticized prison officials and conditions").

Moreover, the record evidence demonstrates quarterly reviews are normally conducted every three months to see how an incarcerated individual is coping with incarceration, to ensure that an incarcerated individual is programing correctly, and to track an incarcerated individual's case plan. (Dkt. No. 90-3, ¶¶ 50, 51). Contrary to Plaintiff's assertions, a quarterly review is not used to coordinate a rehabilitation plan for an incarcerated individual, nor does it have anything to do with an incarcerated individual's security classification or transfer to another facility. (*Id*. ¶¶ 52). Moreover, Offender Rehabilitation Coordinators, such as Benware, have no ability or authority to approve, deny or in any way impact Plaintiff's, or any other incarcerated individual's, transfer to another facility. (*Id*. ¶ 54). Again, at summary judgment, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer*, 156 F.3d at 400.

To the extent Plaintiff contends the "adverse action was attempting to place plaintiff in protective custody at quarterly review, and refusing to submit transfer[,]" (Dkt. No. 105-1, at 20), such claim also fails because Plaintiff has not proffered evidence establishing the causation element. Benware declares that at the end of the quarterly review in February, she asked Plaintiff a standard set of questions to confirm that he did not have any safety concerns. (Dkt. No. 90-23, ¶¶ 32, 33). Plaintiff responded that he did have concerns with security. (*Id*. ¶ 33). Benware explains she understood Plaintiff had a concern about his safety, and she was obligated to notify security. (*Id*. ¶ 34). Plaintiff then denied his prior statements, stating, "I don't have any safety

concerns. I just want out of this jail." (*Id.* ¶ 35). Moreover, after the review was completed, Benware did relay to Central Office that Plaintiff had expressed a desire to have an "area of preference transfer." (*Id.* ¶ 37).

In short, Benware declares she never denied Plaintiff anything that he was entitled to that was within the scope of her job description. (*Id.* ¶ 38). Further, she avers that she has never taken any actions against or regarding Plaintiff because he filed a habeas corpus proceeding or any other legal proceeding. (*Id.* ¶ 41). Accordingly, as Plaintiff has failed to demonstrate a prima facie case for retaliation against Benware, Defendants' motion is granted and Plaintiff's retaliation claim against Benware is dismissed.

### D.    Equal Protection

The Fourteenth Amendment requires that the government treat all similarly situated people alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Specifically, the Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). "To prove a violation of the Equal Protection Clause . . . a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005).

In this case, Plaintiff claims Benware and Webb denied him equal protection by refusing to file Plaintiff's paralegal certificate in TAPER, which would have allowed Plaintiff to receive paralegal wages, despite Webb filing the same paralegal certificate in TAPER for an incarcerated

individual ("Dewie"), who is supposedly white and received paralegal wages.  (Dkt. No. 1, ¶ 60).
Defendants maintain Benware and Webb are entitled to summary judgment.  (Dkt. Nos. 90-1, at
24-25, 109, at 10).  The Court agrees.

Here, the record is devoid of admissible evidence to support Plaintiff's claim that
Benware and Webb acted intentionally or purposefully in their alleged refusal to file Plaintiff's
paralegal certificate in TAPER.  As an initial matter, Benware and Webb have proffered
admissible evidence—declarations signed under penalty of perjury—explaining TAPER "is a
vocational reporting system that reflects an [incarcerated individual's] vocational
accomplishments and indicates an [incarcerated individual's] credited tasks and job titles,
apprenticeship participation, high school equivalence diploma, and any industry job titles earned
while incarcerated."  (Dkt. Nos. 90-23, ¶ 8, 90-30, ¶ 11).  "Only tasks and titles earned as part of
DOCCS Vocational Education or Industry program are entered in TAPER."  (Dkt. Nos. 90-23, ¶
9, 90-30, ¶ 12).  "Paralegal certificates obtained from correspondence schools, such as Plaintiff's
are never entered into TAPER."  (Dkt. Nos. 90-23, ¶ 10, 90-30, ¶ 12).[9]

Benware and Webb declare they do not know "Dewie" and they never filed a paralegal
certificate for any incarcerated individual in TAPER.  (Dkt. No. 90-23, ¶¶ 13-14, 90-30, ¶¶ 14-
15).  Moreover, Benware and Webb declare they "did not refuse to file Plaintiff's paralegal
certificate because he is black."  (Dkt. No. 90-23, ¶ 14, 90-30, ¶ 15).  Insofar as Plaintiff takes

---

[9] Even assuming *arguendo*, Plaintiff's paralegal certification should have been entered into
TAPER, the undisputed record evidence demonstrates Benware, as an Offender Rehabilitation
Coordinator, is not responsible for receiving incarcerated individuals' certificates or entering
them in TAPER.  (Dkt. No. 90-23, ¶ 11).  Benware declares she has never filed any vocational or
certificate information in TAPER, and it was not her responsibility to do so.  (*Id.* ¶ 12).  Plaintiff
has not responded to this argument and fails to raise a genuine issue of material fact as to
Benware's personal involvement.  *See Tangreti*, 983 F.3d at 618.  Thus, Benware is also entitled
to summary judgment for lack of personal involvement.  (Dkt. No. 90-1, at 17-18).

issues with the wages he received, neither Benware or Webb are responsible for reviewing or setting an incarcerated individual's wages, which are set by the Program Committee.  (Dkt. No. 90-23, ¶¶ 15-17, 90-30, ¶¶ 16-18).

To support his claim that he was treated differently because he is Black, in opposition to Defendants' motion, Plaintiff states he asked Dewie "why [Plaintiff's] certificate was not transmitted into his file.  Dewie explained it was because he was White & Plaintiff was Black, and that's how Clinton works."  (Dkt. No. 105, ¶ 87).  But as Defendants point out in reply, Plaintiff's opposition submission presents nothing more than hearsay statements from an incarcerated individual who has never been deposed or produced a sworn statement.  (Dkt. No. 109, at 10); *see Payne v. Cornell Univ.*, No. 18-CV-1442 (GTS/ML), 2021 WL 39684, at *14 (N.D.N.Y. Jan. 5, 2021) (Statements which "contain[ ] hearsay, conclusory assertions not based on personal knowledge, and statements contradicted by [plaintiff's] own previous deposition testimony" may be disregarded, in the discretion of the judge reviewing a summary judgment motion.), *aff'd*, No. 21-109-CV, 2022 WL 453441, at *2 (2d Cir. Feb. 15, 2022).

Here, the record demonstrates an incarcerated individual's certificate from a correspondence course, regardless of their race, is never entered into TAPER and Plaintiff offers no admissible proof to the contrary.[10]  Plaintiff has failed to adduce sufficient evidence for a reasonable trier of fact to find his right to equal protection was violated.  *See, e.g.*, *Phillips v. Girdich*, No. 9:03-CV-1019 (DNH/DRH), 2007 WL 3046744, at *7 (N.D.N.Y. Oct. 17, 2007) (granting summary judgment for defendants where plaintiff-inmate "fail[ed] to offer any evidence beyond his self-serving assertions" that white inmates received more lenient treatment

---

[10] Insofar as Plaintiff contends he raised a genuine issue of material fact based on his deposition testimony, such testimony is not part of the record.  (*See generally* Dkt. No. 105).

than minority inmates); *see also Reynolds v. Barrett*, 685 F.3d 193, 201 (2d Cir. 2012) ("'[A] plaintiff pursuing a claimed . . . denial of equal protection under § 1983 must show that the discrimination was intentional.'") (quoting *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004)).  Accordingly, Benware and Webb are entitled to summary judgment and Plaintiff's equal protection claim is dismissed.

## VI.     CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 90) is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that Plaintiff's First Amendment access to the court claim against Bell, McIntosh, King, Wilson, and Whitehurst is **DISMISSED with prejudice**; and it is further

**ORDERED** that Plaintiff's First Amendment retaliation claim against Wilson, Whitehurst, and Benware is **DISMISSED with prejudice**; and it is further

**ORDERED** that Plaintiff's First Amendment retaliation claim against Sorosa is **DISMISSED without prejudice**; and it is further

**ORDERED** that Plaintiff's Fourteenth Amendment equal protection claim against Benware and Webb is **DISMISSED with prejudice**; and it is further

**ORDERED** that the Clerk **TERMINATE** defendants Bell, McIntosh, Wilson, Whitehurst, Benware, Webb, and Sorosa on the Docket; and it is further

**ORDERED** that Plaintiff's First Amendment retaliation claim against King shall proceed to trial; and it is further

**ORDERED** that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon the parties to this action, along with copies of the unpublished decisions cited herein

in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009)

(per curiam).

**IT IS SO ORDERED.**

Dated: September 11, 2025

Brenda K. Sannes
Chief U.S. District Judge